

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ENTERED
03/09/2016

| | | |
|---|---|---|
| IN RE: | § | |
| JUAN JOSE MONTEMAYOR; aka JOHNNY | § | CASE NO: 14-10031 |
| JOE MONTEMAYOR; aka JUAN | § | |
| MONTEMAYOR; aka JOHNNY | § | |
| MONTEMAYOR; aka JOHNNY J | § | |
| MONTEMAYOR | § | |
| | § | CHAPTER  7 |
| Debtor | § | |
| | § | |
| | § | |
| WILLIAM C. ROMO | § | ADVERSARY NO. 15-01003 |
| Plaintiff | § | |
| | § | |
| VS. | § | JUDGE RODRIGUEZ |
| | | |
| JUAN JOSE MONTEMAYOR | | |
| Defendant | | |

**MEMORANDUM OPINION**
**DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND**
**GRANTING SUMMARY JUDGMENT FOR THE DEBTOR**
[*Resolving ECF No. 9*]

## I.     INTRODUCTION

As a matter of first impression for this court, there are two issues in this case, both of

which are simply stated, but neither are simply answered.  First, what happens to the proceeds

from the sale of a properly exempted Texas homestead if not timely reinvested into a new Texas

homestead within the statutory six-month period where the proceeds would lose their exemption

under Texas law? Second, does the Fifth Circuit's Opinion in *In re Frost* apply in this chapter 7

proceeding rendering the sale proceeds non-exempt and subject to pre-petition creditor's claims?

This Court considers: a Motion for Summary Judgment filed by the chapter 7 trustee, wherein he

requests the return of the proceeds from the sale of debtor's homestead that have not been timely

reinvested under Texas law; the arguments presented in a hearing on this matter held December

16, 2015; all other evidence in the record; and relevant case law. Although the Motion for Summary Judgment was filed by the chapter 7 trustee, under Rule 56(f), the court may alternatively grant summary judgment in the debtor's favor.

## II.   PROCEDURAL BACKGROUND

On May 26, 2015, (approximately 355 days after closing on the sale of Debtor's homestead) the Chapter 7 Trustee, William C. Romo ("***Romo***"), initiated a freeze on the Debtor's bank account in order to preserve such assets as may remain from the proceeds of the sale of the Debtor's Texas homestead ("***Proceeds***"). [Case No. 14-10031, ECF Nos. 38, 40]. The *pro se* Motion in Objection Against Trustee's Action to Take Possession of Debtor's Homestead Exemption Proceeds and Estate ("***Motion in Objection***"), [ECF. No. 40], filed by Juan Jose Montemayor ("***Debtor***") on July 17, 2015, was mooted at a hearing held on September 18, 2015, as Romo had initiated an adversary proceeding to recover the Proceeds on September 17, 2015. [ECF No. 49]. After filing the pending adversary, Romo also filed a Motion for Summary Judgment (the "***Motion***"), which is currently pending before this Court. [Case No. 15-1003, ECF No. 9].

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

## III.   FINDINGS OF FACT

Debtor filed his voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "***Bankruptcy Code***" or "***Code***")[1] on January 27, 2014, thereby initiating Case

---

[1] Any reference to "***Code***" or "***Bankruptcy Code***" is a reference to the United States Bankruptcy Code, 11 U.S.C., or

No. 14-10031.  [ECF No. 1].  Debtor claimed real property in Schedule A, "15155 Sparrow Rd Harlingen, TX 78552…," as in the nature of a homestead (the "***Homestead***").  [ECF No. 1 at 6, 12].  The amount of the Debtor's interest, as declared, was $113,891.00.  Debtor only declared a half interest in the Homestead because his former spouse owned the other half interest.  Debtor elected to claim Texas State exemptions, as allowed by 11 U.S.C. §522(c)(3).  [ECF No. 1 at 6, 12].  Debtor's exemption of the Homestead was based on the Texas Constitution,  art. 16, §§ 50, 51, and the Texas Property Code, §§ 41.001-.002.  *Id.* at 12.  A review of the docket in the main cases shows that neither the Trustee or any party in interest filed an objection to the Debtor's claimed homestead exemption.  Dkt. Case No. 14-10031.

On February 24, 2014, the First Meeting of Creditors, pursuant to 11 U.S.C. § 341, was noticed for March 21, 2014, and the last day to oppose discharge or dischargeability of certain debts was May 20, 2014.  [ECF No. 11].  On March 21, 2014 the First Meeting of Creditors was held and continued to April 17, 2014.  On April 17, 2014 the First Meeting of Creditors was held and continued to May 23, 2014.  [ECF No. 11].

On May 19, 2014, Romo filed his Motion to Extend Time to Object to Discharge ("***Motion to Extend***").  [ECF No. 13].  In his Motion, Romo sought to extend the time due to the Debtor's counsel being unable to attend the May 23, 2014 Meeting of Creditors, due to out of town work-related matters.  *Id.* at ¶ 2.

On May 28, 2014, Debtor filed his Motion for Authority to Sell Homestead. [ECF No. 14].  This Court granted Debtor's Motion for Authority to Sell Homestead on June 3, 2014, which ordered that the Proceeds of the sale be used to extinguish the outstanding liens to Regions Mortgage and HEB Federal Credit Union, with the remaining Proceeds to be evenly divided

---

any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

between Debtor and Debtor's ex-spouse.  [ECF No. 18].

On June 5, 2014, Debtor closed on the sale of his homestead resulting in Debtor receiving net Proceeds in the amount of $107,627.25.  [ECF No. 49 ¶ 7]; [Case No. 15-1003, ECF Nos. 9-3, 9-4]; Pl. Exs. C and D.  On June 9, 2014, it is undisputed that Debtor utilized $41,521.72 of the Proceeds from the sale of his former homestead to purchase a lot on which he intended to construct a new homestead (the "***New Property***").  [Case No. 14-10031, ECF No. 49 ¶ 8]; *see also* Pl. Exs. E and F.  Over the course of the next three months, Debtor expended another $9,558.96 from the Proceeds (for a total of $51,080.68) in mostly dirt work to prepare the lot for construction.  [ECF No. 49 at ¶ 9]; *see also* Pl. Ex. G.

On June 12, 2014, this Court granted Romo's Motion to Extend, extending Romo's deadline to object to discharge to June 30, 2014.  [ECF No. 20].  On June 25, 2014, Romo filed his Second Motion to Extend Time to Object to Discharge ("***Second Motion to Extend***").  [ECF No. 22].  In his Motion, Romo stated that Debtor's attorney was again unable to attend the Meeting of Creditors, this time scheduled for July 11, 2014, due to attendance at an out of town bankruptcy conference.  *Id.* at ¶ 3.  The First Meeting of Creditors was again continued to July 11, 2014.  On July 18, 2014, this Court granted Romo's Second Motion to Extend, extending Romo's deadline to object to discharge to July 31, 2014.  [ECF No. 23].

On August 6, 2014, The First Meeting of Creditors was held and concluded, wherein it was determined that there were potential assets in which to provide creditors a dividend.  On August 6, 2014, Romo issued a Trustee's Notice of Assets, Notice to Creditors And Other Parties In Interest Of The Need To File Claims, setting the bar date to November 10, 2014.  [ECF No. 25].  Pursuant to Fed. R. Bankr. P. 4003(b) the last day to object to Debtor's exemptions expired on  September 5, 2014.  The statutory six (6) month period, pursuant to Tex. Prop. Code §

41.001(c), for which Texas law provisions the Proceeds to be free from creditor's claims expired on December 5, 2014.

This Court issued an Order of Discharge, [ECF No. 27], and a Final Decree, [ECF No. 28], on February 25, 2015, but subsequently vacated both orders on February 26, 2015. [ECF No. 29 and 30]. This Court issued a new Order of Discharge for Debtor on March 3, 2015. [ECF No. 35]. A Final Decree was not subsequently re-entered by this Court.

On March 13, 2015, Debtor deposited $58,731.70, which constituted the residue of his Proceeds, into an account at First Community Bank of San Benito, Texas. Pl. Ex. H. On May 26, 2015, Romo initiated a freeze on Debtor's bank account containing the Proceeds. *Id.*; [ECF No. 40].

Romo filed an Application to Employ Villeda & Romo, as Counsel on July 14, 2015. [ECF No. 37]. The Application was filed for the purpose of prosecuting a § 542 action related to the non-exempt proceeds from Debtor's sale of homestead in June 2014. [ECF No. 37, ¶ 1]. This Court granted the Application to Employ on July 22, 2015. [ECF No. 43].

On July 17, 2015, Debtor filed a *pro se* "Motion in Objection Against Trustee's Action To Take Possession of Debtor's Homestead Exemption, Proceeds & Estate", alleging that Romo had frozen the remaining Proceeds in his bank account and requesting that an extension be granted for Debtor to finish construction of his new homestead using the proceeds. [ECF No. 40]. At the time of the filing, Debtor stated that his prior counsel had ceased representing him for unknown reasons and Debtor was therefore seeking representation. *Id.*

On September 17, 2015, Romo filed a Complaint for Turnover (the "***Complaint***"), thereby initiating the pending adversary proceeding, Case No. 15-1003, seeking the "turnover of homestead sales Proceeds that were not timely reinvested into a habitable homestead." [Case

No. 14-10031, ECF No. 49]; [Case No. 15-1003, ECF No. 1].   On September 18, 2015, this Court conducted a hearing on Debtor's Motion in Objection.   At the hearing, Debtor was represented by new counsel, Richard Habermann, and former counsel, Judith Flores Saldivar of Davis Law Firm, was also in attendance.   Debtor's Motion in Objection was mooted by the pending adversary proceeding.   On October 21, 2015, Debtor filed his Response to Trustee's Original Complaint for Turnover (the "***Answer***").   [ECF No. 8].   In the Answer, the Debtor admits, *inter alia*, that the sale of the homestead occurred during the bankruptcy, that the proceeds were divided evenly between the Debtor and the Debtor's ex-spouse, that the Debtor used a portion of the Proceeds to purchase the New Property, that the Debtor prepared the New Property for construction, and that, as of the filing of the Complaint, the Debtor had $58,731.70 on deposit at First Community Bank.   [ECF No. 8].   However, Debtor denies that he failed to reinvest the homestead Proceeds within the statutory six month period, because Romo sought to delay the grant of discharge to the Debtor "so that the Debtor could borrow the needed additional money to build the house."   *Id.* at ¶ 6.

On November 23, 2015, Romo filed the instant Motion for Summary Judgment arguing that summary judgment was appropriate given Debtor's alleged partial non-reinvestment of homestead sale proceeds, given the Fifth Circuit's decision in *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384, 386 (5th Cir. 2014), which held that Texas Prop. Code § 41.001 provided a 6-month timeframe for reinvestment of proceeds from the sale of a homestead and that non-compliance rendered the proceeds non-exempt and subject to creditor claims.   [Case No. 15-1003, ECF No. 9].   Romo's Motion did not raise any fact issues in regard to the New Property, only to the Proceeds.   On December 13, 2015, Debtor filed his Response to Romo's Motion for Summary Judgment (the "***Response***").   [ECF No. 14].   In his Response, Debtor substantially

reiterates the same arguments, admittances, and denials as in his Answer.  *Id.*

On December 14, 2015, Romo filed a Reply to the Response filed by Debtor.  [ECF No. 15].  In the Reply, Romo argues that Debtor's delay in reinvesting the Proceeds, due to Debtor's proclaimed inability to secure financing, does not constitute a basis by which an extension beyond the statutory six month provision should be granted.  *Id.* at 2-3.  In addition, Romo reiterates that Debtor's failure to reinvest all of the Proceeds into a new homestead within the statutory timeframe renders the remaining Proceeds as non-exempt under the Fifth Circuit's *In re Frost* decision.  *Id.* at ¶ 5.

On December 16, 2015, this Court conducted an evidentiary hearing (the "***Hearing***"), in conjunction with the planned Scheduling Conference, on the Motion for Summary Judgment.  At the hearing, Debtor testified extensively and both parties offered exhibits to be admitted.

    1.     Exhibits offered at the Hearing:

        a.    Debtor's counsel offered and moved to admit a letter from Key Mortgage. However, since Debtor's counsel failed to follow BLR 9013-2(c)-(d),[2] opposing counsel objected to the exhibit and, as a result, this Court sustained

---

[2] (c). Counsel for each party shall also exchange and file exhibit and witness lists with the Clerk of the Court by noon on the Day of Exchange in accordance with Table 1. Witness lists must identify whether each witness is to be called as a fact witness or as an expert. If no delineation is made, the witness will only be allowed to testify as a fact witness unless otherwise ordered by the Court, or the witness is an owner of the property at issue opining as to value.

(d). If counsel intends to use only hard copy exhibits at the hearing or trial, then counsel must deliver either (i) a hard copy of the exhibits to opposing counsel; or (ii) a copy of the exhibits by electronic mail to opposing counsel and, if requested in writing from opposing counsel, a hard copy of the exhibits within 24 hours of receiving the written request. If no written request is made, counsel shall provide a hard copy of the exhibits to opposing counsel at the hearing or trial. If counsel intends to use technology in the courtroom by putting the exhibits on an electronic media so that exhibits may be shown on the screens in the courtroom, then counsel must deliver an electronic copy of the exhibits to opposing counsel and, if requested in writing, a hard copy of the exhibits within 24 hours of receiving the request. The electronic copy must contain the exhibits in the same order as they are contained on the electronic media to be used in the courtroom. Alternatively, the parties may agree in writing to a different manner of exchange, i.e., exchange by electronic mail, facsimile, Dropbox (or other form of internet-based distribution service), etc. Any party agreeing in writing to a different manner of exchange under this paragraph waives the right to object to the admission of any exhibit for non-compliance with this rule and to receive a hard copy of the exhibits under this paragraph.

the objection.  Thus, it was not admitted into evidence.

b.   Romo offered and moved to admit eight exhibits. All eight were admitted

without objection:

i.   Exhibit A:  Debtor's Schedule A filed in Case No. 14-10031

ii.   Exhibit B:  Warranty Deed, dated January 31, 2002, conveying title of the

Homestead to Debtor and Debtor's former spouse.

iii.   Exhibit C:  General Warranty Deed, dated June 5, 2014, conveying title

from Debtor and Debtor's former spouse to new owners.

iv.   Exhibit D:  HUD-1 Settlement Statement, dated June 5, 2014, for the

transfer documented in Exhibit C.

v.   Exhibit E:  Warranty Deed, dated June 9, 2014, conveying title of the New

Property to Debtor.

vi.   Exhibit F:  HUD-1 Settlement Statement for the purchase of the New

Property by Debtor.

vii.   Exhibit G:  Summary of expenditures to prepare the New Property and

supporting invoices.

viii.   Exhibit H:  Copy of Deposit Slip, dated March 13, 2015, from First

Community Bank documenting deposit made by Debtor.

2.   Debtor testified to the following:

a.   Debtor stated, and subsequently confirmed, that the closing on the sale of the

Homestead occurred on June 5, 2014.  *See* Pl. Exs. C and D.  Debtor also

confirmed that the signature on the closing documents was his signature.

b.   Debtor testified that, at the conclusion of the closing of the sale of his former

Homestead, he had full control and free access over the Proceeds from the sale, which totaled $107,627.25, until approximately February 2015.  *See* Pl. Ex. D.

c.     Debtor testified that a portion of the Proceeds was used to purchase the New Property upon which he intended to build a new homestead.  This New Property was purchased for $41,521.72 on June 9, 2014.  *See also* Pl. Ex. E and F.

d.     Debtor testified that, in addition to the purchase of the New Property, he expended an additional $9,558.96 to purchase supplies and pay contractors to prepare the property for the eventual building of a new home.  *See also* Pl. Ex. G.

e.     Debtor also testified that the present state of the New Property is such that it could not be deemed a homestead due to its uninhabitable nature and is not his homestead, thus he presently lives in Harlingen, Texas.

f.     Debtor had divided the Proceeds as he was attempting to secure financing to construct a home on the New Property.  Debtor further testified that the deposit on March 13, 2015 was a consolidation of those two different bank accounts and totaled $58,731.70.  *See* Pl. Ex. H.

3.     On cross examination Debtor testified:

a.     that his intentions for the New Property, in his opinion, had been stymied by Romo's actions.

b.     that the Davis Law Firm, his prior counsel, had communicated with Romo via email regarding the discharge, but there was no evidence to corroborate this

communication.

c.    that Romo had told him that he would receive his discharge within two to three weeks of the completion of the § 341 meeting.

d.    that he repeatedly asked Davis Law Firm, his prior counsel, to get his discharge completed but that Davis Law Firm did not do so.  *But see* [ECF No. 35].

e.    that he had been pre-qualified for a home mortgage from Key Mortgage, a firm that Debtor had previously worked with, but the financing was contingent on the discharge being granted.  *See also* Finding of Fact 1(a).

f.    Debtor, and his counsel, attempted to hold Romo accountable for the delay in the discharge being granted, but Debtor's counsel admitted, on the record, that both of Romo's Motions to Extend Time to Object to Discharge that rescheduled the § 341 meeting were both due to scheduling conflicts by Debtor's prior counsel at the time.

g.    Debtor, in repeating what he had included in his Motion in Objection, [Case No. 14-10031, ECF No. 40], claimed that he had never been made aware of the statutory limitation to reinvest the proceeds from the sale of the Homestead.

h.    that as of the date of the hearing, he had no construction blueprints or plans for the home that he intended to build on the New Property.

4.    Debtor also provided limited testimony on redirect and testified to the following:

a.    Romo did not represent Debtor as his attorney, but only served as the Trustee for the chapter 7 bankruptcy estate.

b.     Debtor estimated that the total cost of the home that he intended to build on the New Property was approximately $150,000, excluding all the site preparation work that had been done, thus meaning he would require approximately an additional $100,000 in financing to complete the project.

## IV.     CONCLUSIONS OF LAW

### a.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." 11 U.S.C. § 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. The Southern District of Texas's standing "Order of Reference to Bankruptcy Judges," provides for the automatic referral of bankruptcy cases to bankruptcy courts.   *In re: Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012). This is a core matter for the purpose of § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core. Section 157 enumerates a non-exclusive list of core matters, which includes "matters concerning the administration of the estate." 11 U.S.C. § 157. The decision to grant or deny a settlement, which includes a decision on awarding compensation to a professional, is squarely one that involves the administration of an estate and furthermore the allowance or disallowance of exemptions from property of the estate. Therefore, jurisdiction is proper by the statutory provisions governing bankruptcy courts.

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may hold wherever "in which the domicile, residence, principal place of business in the United States, or principal

assets in the United States, of the person or entity…" In his petition, Debtor designates his principal place of residence as Harlingen, Texas. Therefore, venue is proper.

### b.   Constitutional Authority To Enter A Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order.  *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts.  *Id.*  The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters. *Id.* at 2616.  The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate.  *Id.* at 2618.  The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19.  Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality.  The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power.  *Id.* at 2620.  This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy.  *See* 28 U.S.C. § 157.  However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments.  *Wellness Int'l*

*Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar requires this Court to evaluate the chapter 7 trustee's Motion for Summary Judgment, [ECF No. 9], for the adversary proceeding seeking to require the Debtor to turn over assets belonging to the bankruptcy estate, a matter which solely concerns federal bankruptcy law.  *See* 11 U.S.C. § 542.  Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the core matter at bar.

### c.  The Legal Standard

#### 1.  *Motion for Summary Judgment*

In the Federal Rules of Civil Procedure, summary judgment is proper when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 154 (5th Cir. 2014).  Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Fed. R. Civ. P. 56 in adversary proceedings.  Fed. R. Bankr. P. 7056.[3]  "The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  Rule 56 provides that the movant may support factual positions by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).  Additionally, Rule 56 provides that an opposing party may object to the material cited by the movant when the material is not presented in a form that is

---

[3] "Rule 56 F.R.Civ.P. applies in adversary proceedings, except that any motion for summary judgment must be made at least 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise."

admissible as evidence in the proceeding.  Fed. R. Civ. P. 56(c)(2).  Furthermore, Rule 56 also provides that courts may consider other material found in the record beyond what has been cited by a party.  Fed. R. Civ. P. 56(c)(3).  The ability to consider material found in the record does not mean that the court must engage in a quest to pursue support for the non-movant.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  The courts must, in determining whether there is a material issue, interpret "the facts and the inferences to be drawn there from in the light most favorable to the nonmoving party."  *Kinkade v. Kinkade (In re Kinkade)*, 707 F.3d 546, 548 (5th Cir. 2013) (citing to *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003)); *see also Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  In order for a fact to rise to the level of a genuine issue of material fact, the fact must be one that "could affect the outcome of an action or allow a reasonable fact finder to find in favor of the non-moving party."  *In re Fauser*, No. 10-31501, 2015 WL 877451, at *1-2 (Bankr. S.D. Tex. Feb. 26, 2015) (citing to *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)); *see also Randall D. Wolcott, M.D., P.A. v. Sebelius*, 497 F. Appx. 400, 404 (5th Cir. 2012) (citing to *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997), which states that "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party.").  In other words, the non-movant bears the burden of showing a genuine dispute through specific evidence, which includes the requirement that the non-movant demonstrate to the court "the manner in which that evidence supports [their] claim."  *Id.* at *3 (citing to Fed. R. Civ. P. (56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004)).  The burden shifts to the non-movant only if the movant should meet its burden of demonstrating the "absence of any genuine issues of material fact," at which time the non-moving party must "establish that there is

a genuine issue of material fact in dispute." *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005) (citing to *Celotex*, 477 U.S. at 322).  If a party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then Rule 56(c) requires that summary judgment be granted against that party.  *Celotex*, 477 U.S. 317, 322 (1986).

Alternatively, the 2010 amendment to the Federal Rules of Civil Procedure codified what had been a long standing belief that courts were permitted to enter summary judgment *sua sponte* against a non-movant when that party was on notice.  *See* Fed. R. Civ. P. 56(f)[4]; *see also Celotex*, 477 U.S. at 326 (stating that "[o]ur conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence"); *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 189 (D.C. Cir. 1985) (Bork, J., dissenting); *Randall D. Wolcott, M.D., P.A.*, 497 F. Appx. at 404 (citing to *Celotex*, 477 U.S. at 326, for the right of district courts to enter summary judgment *sua sponte*); 10A C. Wright, A. Miller, M. Kane, R. Marcus & A. Steinman, Federal Practice & Procedure Civil § 2720 (3d ed.) (granting summary judgment in favor of nonmoving party may be appropriate in certain cases, as "the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or to refute the request for the entry of judgment").  The Fifth Circuit has also acknowledged this ability of a district court to enter summary judgment against a non-movant on multiple occasions and affirmed the ability to do so where "facts dispositive of this issue were presented and argued at length to the

---

[4]  Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
   (1) grant summary judgment for a nonmovant;
   (2) grant the motion on grounds not raised by a party; or
   (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

district court, and the movant … had a full and fair opportunity to develop the record as to their duty to defend." *Jensen v. Snellings*, 841 F.2d 600, 618 (5th Cir. 1988); *see also In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir. 1989) (stating "[w]e have noted that when one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment.") (internal quotations omitted), *abrogated on other grounds by Advance United Expressways, Inc. v. Eastman Kodak Co.*, 864 F.2d 388 (5th Cir. 1992); *British Caledonian Airways Ltd. v. first State Bank of Bedford, Tex.*, 819 F.2d 593, 595 (5th Cir. 1987) (stating that "British Caledonian's own motion for summary judgment opened the door to allow the district court to grant summary judgment for Bedford Bank sua sponte, provided adequate warning and the other summary judgment requirements."); *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985); *S.E.C. v. Microtune, Inc.*, 783 F.Supp.2d 867, 874 (N.D. Tex. 2011) (citing to *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d at 393, and 10A Wright & Miller, Fed. Prac. & Proc. § 2720 (3d ed.)).  The Fifth Circuit, on one occasion, noted that all the parties needed to have done, at a minimum, was to have "fully briefed the issue involved in this case" in order for "the court on its own motion [to] consider the plaintiff's opposition as a cross motion for summary judgment on the same issue." *Evans v. Midland Enterprises Inc.*, 754 F. Supp. 91, 95 (5th Cir. 1990) (citing to *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d at 393).  Thus, if parties had the opportunity to meet in court and there is "no dispute as to as to any fact material to the issue being litigated," then granting summary judgment in favor of a non-movant is appropriate. *Fountain v. Filson*, 336 U.S. 681, 683 (1949).

2.  *Texas Homestead Rights and Fifth Circuit Precedent*

a.  <u>Texas Property Code § 41.001 and Texas Homestead Rights</u>

The Bankruptcy Code provides that a debtor may exempt property interests from the bankruptcy estate under either federal exemptions or, if available, state exemption provisions.  11 U.S.C. § 522(b); *Owen v. Owen*, 500 U.S. 305, 308 (1991) (discussing the process and decisions required for the debtor to exempt property from the estate).  Once a property interest has been exempted, the property is not liable for most pre-petition debts, absent dismissal of the case.  § 522(c) (detailing the types of pre-petition debts that exempt property can be liable for); *see also Owen*, 500 U.S. at 308; *In re Luongo*, 259 F.3d 323, 335 (5th Cir. 2001) (stating that "[p]roperty that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts").  Texas law has, historically, provided and continues to provide very generous protections to the homestead.  *England v. FDIC (In re England)*, 975 F.2d 1168, 1172, 1174-75 (5th Cir. 1992); *In re Smith*, 514 B.R. 838, 842-44 (Bankr. S.D. Tex. 2014); *In re D'Avila*, 498 B.R. 150 (Bankr. W.D. Tex. 2013).  The application of homestead exemptions in the bankruptcy context is an interpretation of Texas law, as developed by Texas courts, and so this Court must determine what the current state of the law is for Texas homestead exemptions.  *In re Norra*, 421 B.R. 782, 789 (Bankr. S.D. Tex. 2009) (citing to *In re Moody*, 77 B.R. 580, 590 (S.D. Tex. 1987) ("Bankruptcy courts must resort to state law for an interpretation of state exemption rights in homesteads."), *aff'd*, 862 F.2d 1194, 1201 (5th Cir. 1989); *In re Leonard*, 194 B.R. 807, 810 (Bankr. N.D. Tex. 1996) (a "bankruptcy court must look to state law to interpret state homestead exemption rights.")).  The Texas Constitution provides the definition for a homestead in Article XVI, § 51, which states:

> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements

thereon; the homestead in a city, town or village, shall consist of a lot or contiguous lots amounting to not more than 10 acres of land, together with any improvements on the land; provided, that the homestead in a city, town or village shall be used for the purposes of a home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired…

In addition to the homestead protection enshrined in the Texas Constitution, the Texas Property Code also contains a provision that grants an exemption to the homestead from most encumbrances and that grants a six month timeframe for which proceeds from the sale of a homestead are "not subject to seizure for a creditor's claim … after the date of sale."  Tex. Prop. Code § 41.001 (a)[5] & (c);[6] *see also* Tex. Const. art XVI, § 50.  However, the exemption is not absolute - § 41.001 does provide certain circumstances in which an encumbrance may be properly fixed on homestead property.  Tex. Prop. Code § 41.001(b).[7]  Furthermore, the scope of a homestead is limited by size, but not restricted in value.  Tex. Prop. Code § 41.002[8] (limiting

---

[5] "A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property."

[6] "The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale."

[7] "(b) Encumbrances may be properly fixed on homestead property for:
(1) purchase money;
(2) taxes on the property;
(3) work and material used in constructing improvements on the property if contracted for in writing as provided by Sections 53.254(a), (b), and (c);
(4) an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;
(5) the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner;
(6) an extension of credit that meets the requirements of Section 50(a)(6), Article XVI, Texas Constitution; or
(7) a reverse mortgage that meets the requirements of Sections 50(k)-(p), Article XVI, Texas Constitution."

[8] (a)  If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements thereon.
(b)  If used for the purposes of a rural home, the homestead shall consist of:
(1)  for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or

property used for a home when an urban homestead is no more than 10 acres and a rural homestead is no more than 200 acres for a family or 100 acres for a single adult person).  Section 41.002 also delineates a test for the determination of rural and urban homesteads and provides boundaries on the acreage protected.  Tex. Prop. Code § 41.002(b)-(c).  The interpretation of the Texas homestead rights provisions, which are held to be "sacrosanct," by this Court must be given a "liberal construction… to the constitutional and statutory provisions that protect homestead exemptions."  *In re Parsons*, 530 B.R. 411, 415-17 (Bankr. W.D. Tex. 2014) (citing to *In re McDaniel*, 70 F.3d 841, 843 (5th Cir. 1995)); *In re Rodriguez*, 282 B.R. 194, 199 (Bankr. N.D. Tex. 2002) (citing to *Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502, 507 (5th Cir. 1992), *cert. denied*, *Commonwealth Land Title Insurance Co. v. Bradley*, 507 U.S. 971 (1993)).

   In order for property to be properly exempted as a homestead, there are certain requirements that must be followed.  First, a determination as to the location of the homestead must be undertaken, as Texas law provides differing standards for rural and urban homesteads. *Bradley v. Pac. Sw. Bank, FSB (In re Bradley)*, 960 F.2d 502, 506 (5th Cir.1992), *cert. denied Commonwealth Land Title Insurance Co. v. Bradley*, 507 U.S. 971 (1993) (discussing rural and urban homesteads).   Second, in order to claim homestead rights, a "claimant must show a

---

   (2)  for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.
 (c)  A homestead is considered to be urban if, at the time the designation is made, the property is:
      (1)  located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and
      (2)   served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality:
           (A)  electric;
           (B)  natural gas;
           (C)  sewer;
           (D)  storm sewer; and
           (E)  water.
  (d)  The definition of a homestead as provided in this section applies to all homesteads in this state whenever created.

combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *In re Thaw*, 620 F. Appx. 304, 309 (5th Cir. 2015) (citing to *Sanchez v. Telles*, 960 S.W.2d 762, 770 (Tex. App. —El Paso 1997, pet. denied)); *In re Bradley*, 960 F.2d at 507.  When claiming homestead protections, the burden of proof lies on the claimant to demonstrate "the homestead character of the property."  *In re Thaw*, 620 F. Appx. at 309 (citing to *NCNB Tex. Nat'l Bank v. Carpenter*, 849 S.W.2d 875, 879 (Tex. App. —Fort Worth 1993, no writ)).   When evaluating a claim of homestead exemption, the determination must "[consider] the owner's concurrent usage and intent to claim the property as a homestead." *Florey v. Estate of McConnell*, 212 S.W.3d 439, 445 (Tex. App. —Austin 2006, pet. denied); *see also Wilkerson v. Jones*, 40 S.W. 1046, 1047 (Tex. Civ. App. 1897) (stating that "[a]ctual occupancy and use of the property as a homestead, or a present intention to so use it, coupled with some acts indicating such intention, will constitute the property homestead").   It is important to note that "mere ownership alone is insufficient to constitute premises of a homestead" and that "the word 'home' is not necessarily synonymous with 'homestead.'" *Sanchez v. Telles*, 960 S.W.2d 762, 770 (Tex. App. —El Paso 1997, pet. denied) (citing to *Silvers v. Welch*, 127 Tex. 58, 91 S.W.2d 686, 688 (1936) and *West v. Austin Nat'l Bank*, 427 S.W.2d 906, 912 (Tex. Civ. App.—San Antonio 1968)).  Texas courts require that the owner, in order to gain protections under the homestead provisions, must evince a good-faith intention to use or occupy the property as a homestead. *Jolesch & Chaska Co. v. Hampton*, 297 S.W. 271, 273 (Tex. Civ. App. 1927) ("The good-faith intention by a party entitled to homestead exemption to occupy property as a homestead is sufficient to so impress such property, but, as no one can know from an expressed intention alone whether it is true or not, our courts require corroborative evidence in the nature of acts, of preparation, or efforts to so occupy, etc., in order to prove such

good-faith intention."); *Vaden v. Collier*, 253 S.W. 889, 891 (Tex. Civ. App. 1923) ("Preparations to improve property for use as a home, accompanied by an intention to make it a homestead, fixes a homestead right in it from that time.").  However, "[p]ossession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact." *Telles*, 960 S.W.2d at 770.  Once the claimant has met the burden of establishing a homestead exemption, the burden shifts to "the objecting party to prove that the homestead has ceased to exist." *In re Crump*, 533 B.R. 567, 572 (Bankr. N.D. Tex. 2015) (citing to *Bradley v. Pac. Sw. Bank, FSB (In re Bradley)*, 960 F.2d 502, 507 (5th Cir.1992) and *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App. —San Antonio 2003, pet. denied)).

Accordingly, a person is entitled to homestead protections under Texas law when that person can demonstrate the requisite intent to make non-homestead real property their homestead when that intent is coupled with overt acts beyond mere ownership and at minimum taking good faith preparatory measures on such real property to make that real property their homestead.

However, the protection of the homestead upon sale is a different matter.  Section 41.001(c) also provides a limited exemption on proceeds from a properly claimed homestead. The present limitation is a six-month time period from the sale of the homestead and receipt of the proceeds by the owner.  Tex. Prop. Code § 41.001(c) (The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.") (the "***Proceeds Rule***"); *In re Frost*, 744 F.3d at 391 (affirming the bankruptcy court's order distributing a portion of the proceeds from the sale of an exempt homestead to creditors based on debtor's violation of § 41.001(c) by failing to reinvest the distributed proceeds into a new homestead within six months).  This limitation is designed such that Texas citizens can have time to transition to a new homestead from their prior homestead without having creditors

seizing the proceeds upon sale of the homestead.  *See In re England*, 975 F.2d at 1174-75 (discussing the history of the homestead exemptions in Texas, noting that the 1897 statute was enacted to prevent "those who voluntarily sold their homestead with the intention of investing the sale proceeds in another homestead … [from] fac[ing] … the possibility of losing all of the proceeds to creditors"); *see also Kirby v. Giddings*, 13 S.W. 27 (Tex. 1890).  A debtor in bankruptcy, however, faces a less straightforward application of the Proceeds Rule based on differences between the various chapters of bankruptcy.  *See In re Frost*, 744 F.3d at 384-90; *In re Morgan*, 481 F. Appx. 183, 183-84 (5th Cir. 2012); *In re Zibman*, 268 F.3d 298, 301-05 (5th Cir. 2001); *In re England*, 975 F.2d at 1168; *Lowe v. DeBerry (In re DeBerry)*, Adv. No. 15-05054, 2015 WL 6528024, at *1, *2-4 (Bankr. W.D. Tex. Oct. 28, 2015); *In re Smith*, 514 B.R. at 842-44; *In re D'Avila*, 498 B.R. at 153-57; *Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 735 (Bankr. W.D. Tex. 1995).

### b.  Fifth Circuit Interpretations of Texas Property Code § 41.001

The Fifth Circuit has discussed the ramifications of proceeds from the sale of a homestead not being used towards a new homestead, in part or in whole, within the six-month statutory limitation on several occasions based on the Texas homestead exemption.  *In re Frost*, 744 F.3d 384 (5th Cir. 2014); *In re Morgan*, 481 F. Appx. at 183 ; *In re Zibman*, 268 F.3d at 301-05; *In re England*, 975 F.2d at 1168.  This Court will now examine the relevant federal case law on the issue of homestead exemptions, proceeds from a sale of the homestead, and what impact, if any, such exemption provisions will have on this debtor and in this particular case.

The Fifth Circuit examined dual homestead exemption claims by a chapter 7 debtor in *In re England*.  975 F.2d at 1170-71.  In *In re England*, the debtor and non-debtor spouse owned an urban homestead, which was sold pre-petition and for which the debtor received $10,000 cash

and a Note Receivable in the amount of $210,000, which contained a balloon,[9] to finance the

purchase.  *Id.* at 1170.  The debtor also owned a ranch in rural Texas, to which he applied a

portion of the proceeds from the sale of the urban homestead for improvements to the homestead

ranch.  *Id.*  The debtor subsequently declared bankruptcy under chapter 11 and exempted the

ranch as a rural homestead pursuant to Texas law.  *Id*.  The debtor also attempted to exempt the

proceeds, in the form of the balloon note, from the sale of the former urban homestead, but

several creditors objected.  *Id.* at 1170-71.  The bankruptcy court and district court, on appeal,

both agreed with the creditors' contention that permitting both exemptions to stand amounted to

a double exemption, which was not permitted under Texas law, and disallowed the exemption of

the proceeds from the sale of the urban homestead.  *Id.* at 1171.  On appeal before the Fifth

Circuit, the court considered the designation of the ranch as a rural homestead and what effect, if

any, that designation would have on the proceeds from the sale of the prior urban homestead.  *In*

*re England*, 975 F.2d at 1172.  The Fifth Circuit first looked to the plain language of Tex. Prop.

Code § 41.001(c) and found that the proceeds from the sale of a homestead were no longer

exempt upon the subsequent purchase of a new homestead at any point during the statutory six-

month provision.  *Id.* at 1173-73 ("[T]he acquisition of another homestead during that six month

period instantly changes the prior homestead to a former homestead and deactivates the proceeds

exemption statute such that the proceeds of the former homestead are no longer exempt").  An

examination of Texas case law, legislative history, and legislative intent confirmed this holding

based on the analysis performed.  *Id.* at 1174-75.  The Fifth Circuit concluded that the Debtor's

designation of the ranch as his homestead caused the proceeds from the former urban homestead

to lose their exempt status, and as both cannot be exempt under Texas law, the proceeds must

---

[9] The terms of the note provided a $1,843 payment for thirty-five months and then the balance owed as a balloon
payment.

lose their exempt status.  *Id.* at 1175.

The Fifth Circuit in *Zibman* heard an appeal on the issue of exemptions under Texas law for the proceeds from the sale of a homestead.  *In re Zibman*, 268 F.3d at 298.  In *Zibman*, the debtors sold their Texas homestead in November 1998, which was approximately three months prior to their filing for chapter 7 bankruptcy.  *Id.* at 300-01.  The debtors completed their move out of Texas in February 1999 and filed for bankruptcy four days later, where they claimed an exemption on the full amount of the proceeds.  *Id.* at 300.  The chapter 7 trustee objected to the exemption in May 1999, for which the bankruptcy court, and district court on appeal, relied on the "snapshot rule"[10] to hold that the debtors' sale of the homestead resulted in a permanent exemption of the proceeds and that the debtors had not waived the exemption by abandonment or commingling.  *Id.* at 301-02.  On the appeal, the Fifth Circuit reviewed the lower decisions to determine the effect of the debtors' sale of the homestead on the claimed exemption of the proceeds.  *Id.*  The Fifth Circuit first looked at the effect of the petition being filed and what comprised the bankruptcy estate.  *Id.* at 301-02 (noting that "[w]hen the Zibmans filed their bankruptcy petition on February 9, 1999, they exercised the § 522 option and elected to claim exemptions offered by Texas state law").  The Fifth Circuit analyzed the bankruptcy court's opinion and its reliance upon case law to establish the fixation of the exemption at the date of filing based on the "snapshot" rule from *White v. Stump*.  *Id.* at 303 (citing to *In re Harlan*, 32 B.R. 91 (Bankr. W.D. Tex. 1983)); *see also White v. Stump*, 266 U.S. 310 (1924).  The Fifth Circuit looked to another Supreme Court decision, *Myers v. Matley*, for its refinement of the snapshot rule — "the bankrupt's right to a homestead exemption becomes fixed at the date of

---

[10] The snapshot rule originates from *White v. Stump*, 266 U.S. 310, 312 (1924), and states that "the bankrupt be allowed the exemptions 'prescribed by the state laws in force at the time of the filing of the petition'; in other words, it makes the state laws existing when the petition is filed the measure of the right to exemptions."

filing … and cannot thereafter be enlarged or altered…" — and determined that the application of this refinement of the snapshot rule necessarily results in a finding that both the bankruptcy court and district court had performed a misapplication vis-à-vis the snapshot rule.  *In re Zibman*, 268 F.3d at 303-04; *see also Myers v. Matley*, 318 U.S. 622, 628 (1943).  The Fifth Circuit reasoned that the lower courts "did not apply the *entire* Texas law that [was] applicable …" and that this misapplication resulted in effectively reading out the six-month limitation present in the statute, thus violating the *Myers* adaptation of the snapshot rule.  *In re Zibman*, 268 F.3d at 304 (emphasis in original).  As such, the Fifth Circuit had little trouble applying the entire statute to the facts of the Zibmans' case and concluding that "[w]hen the Zibmans failed to invest the proceeds from the sale of their Texas homestead in another Texas homestead within the allotted time, the exemption on these proceeds evanesced by operation of law." *Id.* at 305.

In *Morgan*, the Fifth Circuit examined a case where a debtor sold a homestead post-petition, but failed to reinvest the proceeds within the six-month limitation provided by statute. 481 F. Appx. at 183-84.  The matter came before the Fifth Circuit as an appeal by the chapter 7 trustee after the district court affirmed the bankruptcy court's final order denying the objection made on the debtor's claim of exemption by the trustee.  *Id.* at 184.  When the debtor filed chapter 7 bankruptcy in July 2010, he elected to use federal exemptions and there was no exempted equity in the homestead.  *Id.*  The debtor proceeded to sell the homestead, pay the secured creditor for the homestead, and then amend the schedules in order to elect Texas state law exemptions for the homestead proceeds in February 2011.  *Id.*  The trustee objected to the exemption in the amended schedules on the basis that § 41.001(c) protects the homestead proceeds temporarily and argued that as the six-month proceeds exemption period had elapsed without the proceeds being reinvested into a new homestead, the proceeds were no longer

exempt.  *Id.*  The debtor argued that since he possessed a homestead exemption at the filing of

the petition, the proceeds derived from the sale of that homestead were also exempt but without

temporal limitation.  *Id.*  The Fifth Circuit noted that the debtor's argument was flawed because

the debtor claimed the homestead exemption only after he sold the house, thus attempting to

exempt proceeds rather than the homestead itself, and under operation of § 541(a), the proceeds

had already become property of the estate.  *In re Morgan*, 481 F. Appx. at 185-86 (citing to

*Owen v. Owen*, 500 U.S. 305, 308 (1991), for the proposition that while the debtor may exempt

certain property from property of the estate, the estate must possess an interest in the property for

an effective exemption); *see also* 11 U.S.C. § 541(a); *Payne v. Wood*, 775 F.2d 202, 204 (7th

Cir. 1985) (discussing how the debtor's interest in property transfers to the trustee, upon filing

for bankruptcy, from the debtor).  The Fifth Circuit further distinguished *In re Morgan* from that

of *In re Reed*,[11] where a debtor sold their homestead post-petition, failed to reinvest the proceeds

within the statutory time limit, and yet the bankruptcy court held that the state law loss of

exemption did not result in the property being revested in the bankruptcy estate, unlike the debtor

in *Morgan* who attempted to exempt the proceeds from the sale of the homestead rather than the

homestead itself as the *Reed* debtor had done.  *In re Morgan*, 481 F. Appx. at 187.  The Fifth

Circuit, relying upon the holding in *Zibman*, concluded that the bankruptcy court had erred by

overruling the trustee's objection, because once the six-month proceeds exemption elapsed

without the proceeds being reinvested into a new homestead, the proceeds became non-exempt

by statute.  *Id.* at 187.  Ultimately, the Fifth Circuit resolved *Morgan* by reversing the district

court's decision to affirm the bankruptcy court, which had been in error, and remanded the case

back to the bankruptcy court.  *Id.*

---

[11] *Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 735 (Bankr. W.D. Tex. 1995).

Finally, the Fifth Circuit most recently confronted the issue of unused proceeds from the sale of a homestead when deciding *In re Frost*.  744 F.3d at 384.  The debtor, upon filing his chapter 13 bankruptcy petition, declared his homestead as exempt under Texas law, but subsequently sold the homestead post-petition.  *Id.* at 385.  While the proceeds were exempt under Texas law for six-months, the bankruptcy court determined, based on the holding in *Zibman*, that the debtor had failed to reinvest the proceeds into a new homestead within that timeframe and ordered that the proceeds be distributed to the creditors.  *Id.* at 385-86.  On appeal before the district court, the debtor attempted to distinguish the facts of *Zibman*, *inter alia*, from the facts of his case and argued for the permanent exemption of the proceeds rather than the temporary exemption provided by § 41.001(c) – an argument that the district court rejected in affirming the bankruptcy court's order.  *Id.* at 386.  On appeal, the Fifth Circuit reviewed the "snapshot rule" in conjunction with the holding in *Zibman* on the applicability of the "entire state law applicable on the filing date" and then used those two premises to analyze the facts presented in the debtor's case.  *Id.* at 386-89 (emphasis omitted) (concluding that "Frost's reading of the statute is in conflict with *Zibman* and cannot be accepted").  The Fifth Circuit further analyzed prior holdings before concluding that the current precedent provides that the sale of a homestead voids the exemption and that proceeds not reinvested within the six-month statutory provision, regardless of pre or post-petition timing, become non-exempt.  *In re Frost*, 744 F.3d at 388-89; *see also In re England*, 975 F.2d at 1174-75 (holding that "the acquisition of another homestead during that six month period instantly changes the prior homestead to former homestead and deactivates the proceeds exemption statute such that the proceeds of the former homestead are no longer exempt").  The Fifth Circuit concluded by emphasizing that the debtor's exemption of the homestead property has no value limitation, but rather, the exemption is "land itself—not its

monetary value—that is protected under Texas law…"  *In re Frost*, 744 F.3d at 391.  Thus, the decision of the district court was affirmed and the debtor's unused proceeds were non-exempt and, accordingly, subject to pre-petition creditor claims.  *Id.*

Thus, the foregoing cases create a uniform interpretation of the applicability of § 41.001 in bankruptcy to the extent that the temporal limitations of §41.001(c) are violated.  The effect is that the debtor's homestead is subject to the loss of its exemption because the snapshot taken upon filing catches the potential for movement not unlike a photograph from a Harry Potter novel captures the movement of the subjects in the photograph.[12]

c.  Texas Property Code § 41.001 in Bankruptcy Courts

Given the limited time since the Fifth Circuit rendered its decision in *Frost*, there have been limited interpretations of § 41.001(c) and there are even fewer instances arising in a chapter 7.[13]  However, there are several pre-*Frost* opinions that are on point with the instant matter. Therefore, in the interest of comity, this Court will now review two pre-*Frost* decisions and two post-*Frost* decisions that are on point with the instant matter.

As briefly considered by the *Morgan* court, *In re Reed* provides an analysis of a debtor's post-petition sale of homestead property and the effect of the homestead exemption on the proceeds of the sale.  *In re Reed*, 184 B.R. at 735-36; *see also In re Morgan*, 481 F. Appx. at 185-86 (distinguishing, but not overruling or rejecting, *In re Reed* from the matter before the court).  In early 1991, the debtor filed his initial petition for chapter 11 bankruptcy and claimed a rural home as his exempt homestead pursuant to the Texas exemption law.  *Id.* at 735.  The debtor sold the house approximately a year and a half after filing his petition and the purchaser

---

[12] "It seemed to be a handsome, leather-covered book.  Harry opened it curiously.  It was full of *wizard photographs.  Smiling and waving at him* from every page were his mother and father." (emphasis added).
[13] As of the issuance of this Memorandum Opinion, there have been fourteen cases where *In re Frost* was cited and of those fourteen only two involved post-petition homestead sales in a chapter 7 bankruptcy.

provided cash and a note for the exempted homestead. *Id.* However, the debtor had a number of expenses related to the sale of the homestead and, in turn, the purchase note was pledged for each of these expenses. *Id.* at 735-36 (detailing the expenses by party and the value owed). The debtor and his spouse purchased a new ranch for their home, and this too involved a pledge of the purchase note. *Id.* at 735. In May 1993, the chapter 11 case was converted to a chapter 7 and the homestead buyer subsequently paid off the outstanding note, which had been placed in trust with the debtor's attorney. *Id.* at 735-36. Accordingly, the debtor's attorney made corresponding payments to each of the parties owed money by the debtor in relation to the post-petition real estate transactions. *In re Reed*, 184 B.R. at 736. After the debtor had been granted a discharge, the chapter 7 trustee brought an adversary proceeding to avoid the transfers, contending that they amounted to unauthorized transfers of estate property. *Id.* The basis for the trustee's argument was that the homestead proceeds had lost their exemption, pursuant to § 41.001(c), prior to the conversion to chapter 7 and thus became property of the chapter 7 estate. *Id.* To address the arguments made by the trustee, the court first defined what property interests of the debtor becomes property of the estate upon the commencement of the case and determined that, pursuant to 11 U.S.C. § 541(a)(1)-(7), all property interests possessed by the debtor prior to commencement of the case become property of the estate by operation of statute even if the debtor intends to exempt the assets.[14] *In re Reed*, 184 B.R. at 736-37; *see also Taylor v. Freeland & Kronz*, 503 U.S. 638, 641 (1992). In addition to property interests possessed at the time of filing, certain other future interests of the debtor obtained post-petition also become property of the estate. *In re Reed*, 184 B.R. at 736-37 (citing to 11 U.S.C. §§ 541(a)(5)(A)-(C),

---

[14] Citing to the legislative record for § 541(a)(1), H.R. Rep. No. 595, 95th Cong., 1st Sess. 6/367–68 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 82–3 (1978), 1978 U.S. Code Cong. and Admin. News, 5787, 5967, 6322–24, 5868–69, in footnote 5, which the court summarized as "[u]nder 541(a)(1) all property of the debtor becomes property of the estate, including exempt property."

(a)(6)-(7)).  The court reasoned that the two most likely applicable provisions were §§ 541(a)(6) and (a)(7) because, pursuant to § 41.001(c), the homestead proceeds ceased to be exempt six months post-sale and the issue turns on whether the proceeds were either "proceeds … of or from property of the estate," post-petition property acquired by the estate under § 541(a)(7), or, alternatively, not property of the estate at all.  *Id.*. at 736-37, 741.  In analyzing the possible application of § 541(a)(6), the court looked at property exempted by the debtor to determine the net effect upon the bankruptcy estate, including the potential reversion of interest from the debtor to the bankruptcy estate.  *Id.* at 737-38.  In particular, the court looked at subsection (c) and paragraph (l) of 11 U.S.C. § 522 and interpretations of exemption by other courts before concluding that exempt property is "immunized… against any liability for prepetition debts," because exemptions serve as "an interest withdrawn from the estate (and hence its creditors for the benefit of the debtor."  *Id.* (citing to *Owen*, 500 U.S. at 307-08) (emphasis omitted); *see also Taylor*, 503 U.S. at 642-44 (discussing the process and effect of exemption when a party fails to object to the exemption); *In re Donaldson*, 156 B.R. 51, 53 (Bankr. N.D. Cal. 1989).  The court further concluded that, as the exempt property had been withdrawn from the bankruptcy estate, § 541(a)(6)-(7) could not act to revest an exempted property interest back into the bankruptcy estate.  *In re Reed*, 184 B.R. at 738-40.  Thus, the court held that the trustee's claim was inappropriate, as the property sought was not property of the estate, and granted the defendant's motion for summary judgment.  *Id.* at 740-41.

In 2013, the *D'Avila* court reviewed another case of a post-petition sale of a homestead by a chapter 7 debtor.  *In re D'Avila*, 498 B.R. at 150.  The debtor owned the house jointly with her estranged husband, but was exempted pursuant to the Texas homestead exemption, and sought to sell the property based on a pre-petition contract to sell the home.  *Id.* at 152.  The

chapter 7 trustee objected to the debtor's application to sell on the basis that the proceeds from the homestead sale are subject to a six-month limitation for the exemption and sought an extension on the objection deadline. *Id.* at 152-53. The court reviewed § 41.001(c) and the snapshot rule, including its application in *Zibman*, before turning to how the Fifth Circuit applied the Texas Proceeds Rule in *Morgan*. *Id.* at 154-57. The court contrasted the case law, but ultimately determined that both *Zibman* and *Morgan* were distinguishable, since both cases dealt with the exemption of proceeds, not the exemption of a homestead itself. *Id.* at 157. The court also distinguished two chapter 13 cases, *In re Zavala*, 366 B.R. 643 (Bankr. W.D. Tex. 2007), and the district court's decision in *Frost*, and noted that a chapter 13 case is factually distinguishable from that of a chapter 7, due to absence of a provision whereby property of the estate is as broadly construed as in a chapter 13 case. *In re D'Avila*, 498 B.R. at 157-59. Importantly, the court noted how the *In re Frost* bankruptcy court's response to the debtor's attempt to distinguish *Zibman* in the case of a post-petition sale, which was, *inter alia*, that:

> If it was a Chapter 7, I would agree with you. But since it's a Chapter 13, you have—you don't have a snapshot of property of the estate.... During a 13 ... new property of the estate comes in during the pendency of the case and becomes property of the estate.

*Id.* at 158 (citing to multiple statements by the bankruptcy court from the hearing transcript). The court concluded that the snapshot of an exempted homestead in a chapter 7 does not include the Proceeds Rule within the exemption and is therefore inappropriate to require a debtor to meet the rule's burden. *Id.* at 159-60.

The first post-*Frost* case, *In re Smith*, provides an analysis of the sale of an exempted homestead post-petition and post-discharge by the debtors but prior to the case being closed. 514 B.R. 838, 841 (Bankr. S.D. Tex. 2014). The debtors filed for chapter 7 bankruptcy on March 20, 2012 and received their discharge on April 25, 2013. *Id.* at 841. After receiving their discharge,

the debtors sold their properly exempted homestead on June 21, 2013, resulting in net proceeds of $813,935.77, and which were not reinvested into a new homestead within six-months as required by § 41.001(c).  *Id.*  The chapter 7 trustee initiated an adversary proceeding for turnover of the proceeds, arguing that they were non-exempt by operation of law.  *Id.*  The bankruptcy court reviewed the history behind the Proceeds Rule, including the effect of *In re England*, and reactions by the legislature that brought about the current revision of the statute.  *Id.* at 842-45. The bankruptcy court also discussed the holding from *In re Frost*, which was announced five months earlier, and how it applies to chapter 7 as well as chapter 13 cases.  *Id.* at 844-50.  The bankruptcy court reasoned that, since the decision in *In re Frost* was premised upon § 41.001(c) and not 11 U.S.C. § 1306,[15] the holding applied equally to both chapter 13 bankruptcy cases and the chapter 7 case at bar.  *In re Smith*, 514 B.R. at 850.  *But see In re DeBerry*, 2015 WL 6528024, at *2-4  (distinguishing the holding of *In re Frost* based on a chapter 13 case as opposed to a chapter 7 case); *In re D'Avila*, 498 B.R. at 157-59 (reasoning that a chapter 13 bankruptcy treats homestead proceeds fundamentally different than a chapter 7 and citing to hearing transcripts before the *In re Frost* district court).  The *Smith* court determined that, by virtue of *Frost*'s holding, the homestead proceeds were transformed from exempt to non-exempt status once the six-month limitation had been exceeded.  *In re Smith*, 514 B.R. at 850.  As the chapter 7 trustee had filed a notice that there were possible assets in the case, the trustee was bound to seek out non-exempt assets to liquidate in order to pay creditor claims.  *Id.* at 850-52. The discharge received by the debtors did not affect creditor's claims against the debtor's non-exempt assets, the proceeds, as non-exempt assets that had not been abandoned, were available

---

[15] This Court  does acknowledge that there is no comparable provision in a chapter 7 to chapter 13's § 1306, which provides that "[p]roperty of the estate include[s] … all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted … and earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted …"

to be used to pay pre-petition creditor claims. *Id.*; *see also In re Hawk*, 524 B.R. 706 (Bankr. S.D. Tex. 2015) (holding that, as a logical extension of the holding in *Frost*, the debtors' failure to reinvest proceeds from an Individual Retirement Account under the Texas exemption statute resulted in the proceeds becoming non-exempt).

The *Smith* court, in order to further support its conclusion, cited to a sister court's opinion, *In re Evans*, 135 B.R. 261 (Bankr. S.D. Tex. 1991). *In re Evans* dealt with dueling exemptions in a similar fact pattern to that of *In re England*, which was decided the following year. *Compare Id.* at 262-63 *with In re England*, 975 F.2d at 1170-71. Unsurprisingly, the outcome in both cases was identical and can be summed up by this axiom, which was stated in *In re Evans*: "there can be but one homestead." *Compare In re Evans*, 135 B.R. at 264 *with In re England*, 975 F.2d at 1175.

The second post-*Frost* case is *In re DeBerry* and analyzes a similar situation as *In re Smith* and the instant matter. *In re DeBerry*, 2015 WL 6528024, at *1. In *In re DeBerry*, the issue before the court was "whether the proceeds from the post-petition sale of a chapter 7 debtor's properly exempted Texas homestead loses its exempt character if not reinvested in another Texas homestead within six months following the date of sale." *Id.* The debtor had filed for bankruptcy in February 2014, properly exempted his homestead, but sought and received court approval to sell the homestead in September 2014. *Id.* After the sale had been completed, the debtor failed to reinvest the proceeds into a new homestead within the six-month statutory limitation and the chapter 7 trustee initiated an adversary proceeding to recover the proceeds for the benefit of the pre-petition creditors. *Id.* The *DeBerry* court reviewed the *Zibman*, *Morgan*, and *Frost* decisions by the Fifth Circuit for their applicability in the matter before the court, but

distinguished all three as factually dissimilar.  *Id.* at \*2-3;[16] *see also In re Frost*, 744 F.3d at 385; *In re Morgan*, 481 F. Appx. at 185; *In re Zibman*, 268 F.3d at 305.   The court then further distinguished *Frost*, noting that the provisions of § 1306 are without an equivalent provision in chapter 7, and thus the decision was not dispositive.  *In re DeBerry*, 2015 WL 6528024, at \*3.  The court also contrasted two bankruptcy court decisions that involved post-petition homestead sales – *In re Smith* and *In re D'Avila* – but ultimately determined that the approach taken by the *D'Avila* court was the correct conclusion.  *Id.*; *see also In re Smith*, 514 B.R. at 840; *In re D'Avila*, 498 B.R. at 153-54.   In adopting the *D'Avila* legal conclusions, the resolution to the matter before the court was simple: the debtor exempted the homestead itself on the date of the petition, not the proceeds, and therefore the Proceeds Rule "is not "necessarily pictured" in the post-petition snapshot."  *In re DeBerry*, 2015 WL 6528024, at \*3.  As such, the court held that the homestead proceeds "were never part of Debtor's chapter 7 bankruptcy estate and thus, the Trustee cannot avoid the purported transfer under § 549."  *Id.* at \*4.

### d.  <u>*In re Brown* – Clarifying the Meaning of *In re Frost*</u>?

The Fifth Circuit briefly addressed the interpretations of the effect of the snapshot rule from *In re Frost* and *In re Zibman*.  *In re Brown*, 807 F.3d 701, 709-10 (5th Cir. 2015).   In *Brown*, the Fifth Circuit addressed a chapter 7 bankruptcy wherein the debtor died during the pendency of the case and the chapter 7 trustee objected to certain claims on the basis that the Texas Estates Code provision relied upon for the exemption was not applicable.  *Id.* at 704-05.  The debtor died, effectively intestate, in Florida, but had previously resided in Texas, and thus the issue of which state law exemptions were applicable was the primary issue, as the debtor's

---

[16] Noting that the debtor in *In re Zibman* claimed a new homestead, unlike the instant debtor, that caused the proceeds to lose their exempt character; the debtor in *In re Morgan* sold their homestead post-petition, unlike the instant debtor, tried to exempt the proceeds not the homestead itself; and the *In re Frost* debtor, while factually similar in some respects, filed for bankruptcy under chapter 13 rather than chapter 7.

personal representative was attempting to exempt property pursuant to the Texas Estates Code. *Id.* at 704-06.  The bankruptcy court had ruled, in sustaining the trustee's objections, that the debtor was only entitled to exemptions under Florida law, which the Fifth Circuit found to provide the correct result but for the wrong reason.  *Id.* at 707-08.  The Fifth Circuit noted that the Texas Estates Code only becomes applicable upon the death of the debtor, and thus the application of the Snapshot Rule became a central focus for determining the availability, or lack thereof, of exemptions under the Texas Estates Code.  *Id.* at 708-09.  The debtor's personal representative argued that the holdings of *In re Zibman* and *In re Frost* rendered the Snapshot Rule inapplicable – a contention with which the Fifth Circuit disagreed.  *Id.* at 709-10.   In rebutting that contention, the Fifth Circuit clarified the effect of the holdings in the two cases:

> *Zibman* and *Frost* hold that, if a debtor is eligible for a state law exemption at the time he files bankruptcy, but the debtor fails to comply with the State's requirements for remaining eligible for that exemption throughout the entirety of the bankruptcy case, then the debtor loses the exemption. Neither *Zibman* nor *Frost* holds that a debtor may become eligible for an exemption that was originally unavailable to him when circumstances change during the pendency of the bankruptcy.

*Id.* (emphasis in original).  Thus, the debtor's argument failed because he was ineligible for exemptions under the Texas Estate Code at the time of filing and his death is immaterial.  *Id.* at 710.  The Fifth Circuit's resolution of the remainder of the case disposes of unrelated issues to the instant matter at bar, but consisted of the application of laws of Florida.  *Id.* at 710-16. Ultimately, *In re Brown* does not clarify the meaning or applicability of *In re Frost* in a chapter 7 bankruptcy such as the one before this Court.  Recall that *In re Zibman*, a chapter 7 proceeding, stands for the proposition that the snapshot rule catches both the asset exempted and the governing state law at the time of filing and *In re Frost*, a chapter 13 proceeding, stands for the proposition that §41.001(c)'s temporal limitation of exemption must be complied with or a

debtor will face the loss of their homestead proceeds exemption, but neither case stands for the proposition that the holding in *In re Frost* is applicable in a chapter 7 proceeding such as the one before this Court today.

### e.   Post-Petition Homestead Sales in Chapter 7 Bankruptcies Post-*Frost*

The preceding cases demonstrate a dichotomy of holdings within Texas bankruptcy courts, but show a consistent approach by the Fifth Circuit in a variety of differing factual scenarios.  Thus, the *Frost* court's summary of Fifth Circuit precedent is that "(i) the sale of the homestead void[s] the homestead exemption and (ii) the failure to reinvest the proceeds within six months void[s] the proceeds exemption, regardless of whether the sale occurred pre- or post-petition."  *Id.* at 388; *see also In re Brown*, 807 F.3d 701, 709-10 (5th Cir. 2015) (explaining that the holdings of *Zibman* and *Frost* create a single interpretation, regardless of the chapter of bankruptcy case at bar, of § 41.001(c) that requires a debtor to remain "eligible for th[e] exemption throughout the entirety of the bankruptcy case" or risk losing the exemption).

The facts of the instant case do not fit into the precedent of the Fifth Circuit cases as Debtor properly exempted his Texas homestead, without objection by Romo, and, with court approval, sold the Homestead post-petition.  This Court will now discuss how each of the precedents, *supra*, are distinguishable from the instant case.

### 1.   Application of Proceeds Rule in Chapter 7 Cases

As previously discussed, *supra*, there are three chapter 7 cases where the Fifth Circuit has analyzed the Proceeds Rule and each is distinguishable from the instant matter.  First, *In re Zibman* is factually distinguishable in cases, such as here, where a debtor opts to exempt the actual homestead, rather than homestead proceeds, under Texas law in their initial petition and subsequently sells the homestead post-petition.  Second, *In re Morgan* is also factually

distinguishable from the instant case where the homestead is exempted pursuant to Texas law, rather than under federal law with no exempted value, sells the exempted homestead post-petition, and then attempts to exempt the homestead proceeds under Texas law.  Third, *In re England* is distinguishable, in some respects, when a debtor exempts only a homestead and does not attempt to exempt proceeds from the pre-petition sale of a prior homestead as well.

Here, Debtor properly exempted the Homestead, pursuant to Tex. Prop. Code §§ 41.001-.002, not proceeds from a pre-petition sale of his homestead as in *Zibman*.  Thus, Debtor is similar to the debtor in *England* with respect to his exemption of the rural homestead, but dissimilar to the *England* debtor by not attempting to exempt prior homestead proceeds as well. Furthermore, Debtor elected to exempt his homestead under Texas law, thus fully exempting the value of the homestead less secured liens, not proceeds from a post-petition sale of the homestead as in *Morgan*.   Therefore, all three of the chapter 7 precedent cases are distinguishable to the instant case on material facts relevant to their disposition and, as such, are not controlling in the instant case.

### 2.   Understanding the Underpinnings of In re Frost

The remaining Fifth Circuit precedent is *In re Frost*.  There are facts from the underlying bankruptcy case, and thus contributing to the affirmed order, of *In re Frost* that are factually distinguishable from the instant case and, like the subsurface portion of an iceberg, must be taken into account.  Taking these underlying facts into consideration, in this Court's opinion, is key to understanding what proposition the decision in *In re Frost* really stands for.  The context of *In re Frost*, which is raised in the parties' briefs, is not controlling, but they are persuasive to the extent that they reveal the underlying facts upon which *In re Frost* is built.

First, at the most basic level, the instant case is a chapter 7 bankruptcy, rather than the

chapter 13 bankruptcy in *Frost*.   While not determinative by itself, as the *Frost* court did not specifically rely on any provisions of chapter 13 bankruptcy as a basis of authority, there are certain provisions of chapter 13 that provide significant context for the decision.   *See* Br. for Appellant at 13-16, *In re Frost*, 744 F.3d 384 (5th Cir. 2014), (No. 12-50811), 2012 WL 5464325; Br. for Appellee at 20, 29, 32-35, 744 F.3d 384 (5th Cir. 2014), (No. 12-50811), 2012 WL 6563305; Reply Br. for Appellant at 1-2, 5, 744 F.3d 384 (5th Cir. 2014), (No. 12-50811); *see also In re Frost*, 744 F.3d at 389; *see also In re Smith*, 514 B.R. at 848.   To wit, the chapter 13 trustee presented arguments based on the distinctions between the two chapters of bankruptcy, when noting the difference between Frost, as a chapter 13 debtor thus subject to 11 U.S.C. § 1306, and the debtor from *Reed v. Lowe*, which Frost attempted to rely upon for authority in his brief, as a basis for the chapter 13 trustee's argument as to why *In re Reed* was inapposite and the proceeds should be property of the chapter 13 estate.   Br. for Appellee at 19-20, 744 F.3d 384 (5th Cir. 2014), (No. 12-50811), 2012 WL 6563305.

Second, as pointed out by the chapter 13 trustee in her brief, the chapter 13 plan, in use by the Western District of Texas, San Antonio Division at the time of the case,[17] provides that "all property of the estate shall not vest in the Debtor(s), but shall remain as property of the estate" at the time of plan confirmation.   *Id.* at 32-33; *see also* 11 U.S.C. § 1327(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests[18] all of the property of the estate in the debtor.").   This provision raises significant issues for the application of *Frost* to the instant case, which this Court will address individually.

---

[17] The provisions of the chapter 13 plan still maintain this provision.   *See* Chapter 13 Plan, United States Bankruptcy Court for the Western District of Texas, San Antonio Division 3, http://www.txwb.uscourts.gov/sites/default/files/file/order_ch13_pln_san_antonio.pdf

[18] *Vest*, Black's Law Dictionary (10th ed. 2014) ("1. To confer ownership (of property) on a person. 2. To invest (a person) with the full title to property. 3. To give (a person) an immediate, fixed right of present or future enjoyment."); *see also Vest*, Ballentine's Law Dictionary (3d ed. 1969) ("To give an immediate fixed right of present or future enjoyment.").

The first of these issues is the retention of the "exempt" property by the chapter 13 estate, which means that Frost's exempted homestead, while proper, remained property of the estate until the exempted homestead fully vested back in Frost upon discharge.  The chapter 13 plan's treatment of the homestead is significant given the timeline of the case.  Frost's Motion to Sell Property was granted by the bankruptcy court on March 26, 2010, more than a year before Frost's chapter 13 plan was confirmed.  *Compare* Order Granting Debtor's Motion to Sell Real Property Free An[d] Clear of All Liens and Interests, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. Mar. 26, 2010), ECF No. 23 *with* Order Confirming the Debtor's Chapter 13 Plan, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. May 20, 2011), ECF No. 69.  Therefore, pursuant to the chapter 13 plan, the homestead had not fully revested in Frost and thus was still property of the estate at the time Frost sold his homestead irrespective of unmodified operation of § 1327(b).[19] Had the chapter 13 plan not modified the vesting of the exempted property, the homestead, though properly exempted, would still have been property of the estate at the time it was sold because the chapter 13 plan was *not* confirmed until over a year *after* the homestead was sold.  § 1327(b).  Frost received his discharge on July 7, 2014 and the bankruptcy case was administratively closed on August 29, 2014, approximately five months after *In re Frost* was decided.

The Supreme Court and the Fifth Circuit have reviewed § 1327(b) on several occasions and given effect to the plain meaning of the statute.  *Harris v. Viegelahn*, 135 S. Ct. 1829, 1839 (2015) (discussing the impact of the chapter 13 plan provisions, as permitted by § 1327(b), on

---

[19] For the purposes of the Proceeds Rule, some of Frost's proceeds should have retained their *contingent* exemption because they had been retained by the chapter 13 trustee and not distributed to Frost.  Order Granting Debtor's Motion to Sell Real Property Free An[d] Clear of All Liens and Interests, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. Mar. 26, 2010), ECF No. 23.  *But see Law v. Siegel*, 134 S. Ct. 188 (2014) (holding that by surcharging a debtor's exemption the bankruptcy court exceeded its statutory and inherent sanction powers without a basis in the Bankruptcy Court).

the debtor's wages, a post-petition property of the estate); *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 (5th Cir. 2015) (noting how the provisions of a chapter 13 plan operate to stall vesting and the debtor's assets remain property of the estate); *In re Flugence*, 738 F.3d 126, 129-30 (5th Cir. 2013) (noting the conflict between § 1306 and § 1327 on post-petition assets and vesting of property of the estate, which was resolved by the provisions of the plan preventing property of the estate from vesting in the debtor until discharge); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 268 (5th Cir. 2012) (discussing how the debtor's chapter 13 plan of reorganization provided that the debtor's assets would "remain property of the estate and only vest in the debtor upon dismissal, discharge or conversion."). *Cf. In re Querner*, 7 F.3d 1199, 1202 (5th Cir. 1993) (citing to § 1327(b)'s vesting provision and interpreting it to preclude creditors, due to the confirmation of the chapter 13 plan, from pursuing a related probate estate). Thus, this Court must give effect to the plain meaning of § 1327(b).

### 3. Implied Analysis of *In re Frost*

If Frost's homestead was property of the estate under the chapter 13 plan, then the second issue focuses on the appropriate framework to analyze the impact of the Proceeds Rule on Frost's homestead sale proceeds. As such, the appropriate section of the Code is either under 11 U.S.C. § 1306, as after-acquired property, or 11 U.S.C. § 541(a)(6), as proceeds of property of the estate. The implied analysis in Frost, albeit not specifically mentioned by the Fifth Circuit, as to the effect of the Proceeds Rule derives from 11 U.S.C. § 541(a), as the homestead, despite its exemption, had not vested in the debtor and was still property of the chapter 13 estate at the time the exemption was claimed through the time the statutory six-month provision terminated. *Compare* Order Granting Debtor's Motion to Sell Real Property Free An[d] Clear of All Liens and Interests, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. Mar. 26, 2010), ECF No. 23 *and*

Order Confirming the Debtor's Chapter 13 Plan, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. May 20, 2011), ECF No. 69 *with* 11 U.S.C § 1327 *and* 11 U.S.C § 541(a).  The district court in *Frost* applied *Zibman*, *inter alia*, as a basis to analyze the impact of the Proceeds Rule and determined that, as required by *Zibman*, the homestead exemption was terminated upon Frost's failure to meet the requirements imposed by the Proceeds Rule.  Memorandum Opinion and Order Affirming Decision of the Bankruptcy Court, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. July 9, 2012), ECF No. 111 (Opinion of the District Court for the Western District of Texas citing to *In re Zibman*, 268 F.3d 298, 304-05 (5th Cir. 2001), for the proposition that exemption of proceeds evanesced by operation of law at the end of the six-month statutory provision of § 41.001(c)); *see also In re Davis*, 170 F.3d 475, 483 n.10 (5th Cir. 1999).  In doing so, the district court affirmed the bankruptcy court's interpretation of Frost's proceeds as, upon the six months elapsing, becoming non-exempt and property of the estate to the extent that Frost had not used the $23,000 on a new homestead.  *Id.* at 7.

By analyzing the sale of Frost's homestead under a § 541(a) framework, due to the provisions of the chapter 13 plan, the outcome of *In re Frost* becomes a much clearer standard to apply.  According to the Fifth Circuit, at the termination of the six-month exemption under § 41.001(c), Frost's distributed proceeds from the homestead sale reverted back to the chapter 13 estate.  *In re Frost*, 744 F.3d at 389.  However, by looking to the provisions of the Code, namely § 1327, the homestead never truly left the chapter 13 estate, because it was exempt but would not vest in the debtor until the resolution of either an order granting plan confirmation *or*, as provided for by the Western District of Texas' chapter 13 plan, as a modification of § 1327(b), completion of all plan payments under the plan and the entry of an order of discharge.  Thus, under this interpretation, Frost's proceeds really did not revert to the bankruptcy estate as much

as the exemption "evanesced by operation of law," like the debtor's exempted proceeds in *Zibman*, and, as such became non-exempt property of the estate rather than exempt property of the estate.  *See In re Zibman*, 268 F.3d at 305; *see also In re England*, 975 F.2d at 1174-75. Moreover, unlike the debtor in *Morgan*, Frost had exempted, albeit without vesting in the debtor, his homestead, *not* the proceeds themselves, such that only the portion of the proceeds that had been distributed to Frost were subject to the Proceeds Rule's operation of reverting the proceeds to the chapter 13 estate.  Final Order Regarding Trustee's Objection to Debtor's motion to Sell Real property Free and Clear of All Liens and Interests Filed March 3, 2010, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. July 9, 2012), ECF No. 67 (discussing the apportionment of the proceeds from Frost's homestead sale into two portions: the portion retained by the trustee, as such subject to equitable tolling, and the portion distributed to Frost that was not reinvested in a homestead); *see also In re Frost*, 744 F.3d at 389 ("Frost's interest in his homestead changed from an unconditionally exempted interest in the real property itself to a conditionally exempted interest in the monetized proceeds from the sale of that property."); *In re Morgan*, 481 F. Appx. at 186-87.

This interpretation of the underlying facts of Frost's chapter 13 bankruptcy case is also supported by the Fifth Circuit's analysis in *In re Morgan*, where the debtor failed to exempt any value on his homestead under the federal exemptions, thus resulting in the homestead passing into the bankruptcy estate under § 541(a) upon the filing of Morgan's petition.  481 F. Appx. at 184-86.  The debtor subsequently sold the homestead property and then attempted to exempt the proceeds pursuant to § 41.001.  *Id.* at 184-187.  The Fifth Circuit analogized the *Morgan* case to a prior case in order to determine that "[w]hen Ronald filed his bankruptcy petition and did not claim an exemption for his Texas homestead, that property passed by operation of law into the

bankruptcy estate" and the later sale of the homestead resulted in "the proceeds of that sale, and not the homestead itself, … [being] property of the estate." *Id.* at 186-87 (citing to *Hardage v. Herring National Bank*, 837 F.2d 1319 (5th Cir. 1988), and 11 U.S.C. § 541(a)).  Therefore, upon Frost's failure to comply with the provisions of § 41.001(c), the distributed proceeds became non-exempt property of the estate, just as the homestead proceeds had in *Morgan*, and, pursuant to § 541(a)(6), the distributed proceeds were reclaimed by the chapter 13 estate as proceeds of property of the estate, just as they had been in *Morgan*.

Additionally, an implied analysis of Frost's distributed proceeds under the guise of §1306 can be completed by analogizing the distributed proceeds to case law on the sale of non-exempt assets in a chapter 13 bankruptcy.  The bankruptcy court in *In re Garcia* analyzed a similar fact pattern to that of *Frost*, but in a plan modification context, and came to a similar conclusion by applying § 541(a)(6) and § 1306 to determine that the homestead proceeds became non-exempt property of the estate upon failure to reinvest within the statutory timeframe.  *Compare In re Garcia*, 499 B.R. 506, 515 (Bankr. N.D. Tex. 2013) *with In re Frost*, 744 F.3d at 389.  The court in *Garcia* specifically acknowledges how § 1306 acts to extend the grasp of § 541(a) to after-acquired property and, in applying these provisions to those facts at bar, determined that the proceeds of the homestead sale were *both* property of the estate *and* an asset acquired by the debtors post-petition.  *In re Garcia*, 499 B.R. at 510-11.  Thus, by using *Garcia*'s reasoning as a guide, the analysis of Frost's distributed proceeds again results in the proceeds being property of estate because they were proceeds, upon the loss of exemption, of the homestead and, by virtue of § 1306, an asset acquired by the debtor post-petition.  The *Garcia* court went on to discuss one of the core holdings of *In re Reed*, which stated that an exempted asset in a chapter 7 bankruptcy is forever removed from the bankruptcy estate, and concluded that, despite being only

distinguished in *In re Morgan* and not overruled, the effect of *Zibman*'s treatment of the Proceeds Rule, was to, in effect, preclude *Reed*'s interpretation of § 522(c). *Id.* at 511-14. *But see* § 522(c)(1-4) (providing the types of pre-petition debt that exempt assets can be liable for); *Owen v. Owen*, 500 U.S. 305, 308 (1991) ("Property that is exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts."); *In re Davis*, 170 F.3d 473, 478 (5th Cir. 1999) (stating that "[i]f the exemptions are not objected to, the property becomes exempt and unavailable to be levied on by pre-petition creditors or managed by the trustee," and later that "unless a case is dismissed, exempt property may not be held liable to repay any pre-petition debt of the debtor."); *In re Farr*, 278 B.R. 171, 177 (B.A.P. 9th Cir. 2002) (citing to the legislative history for the conclusion that § 522(c) "was enacted to insulate exempt property from any nondischargeable prepetition debts which are not listed as exceptions"). The *Garcia* court also cited to the holding of *In re Zavala*, where the bankruptcy court applied *Zibman* to a post-petition sale of an exempted homestead in a chapter 13 bankruptcy, as further support for its analysis. *Id.* at 513-14; *see also In re Zavala*, 366 B.R. 643 (Bankr. W.D. Tex. 2007). Ultimately, the *Garcia* court still found that the homestead proceeds were non-exempt property of the estate because, unlike in *Reed*, the case before it was a chapter 13 bankruptcy and § 1306 necessarily applied. *Id.* at 511-12, 514. Thus, by giving operation to § 1306 in the chapter 13 case, the *Garcia* case illustrates how homestead proceeds, like those in *Frost*, that have lost their exempt status revert to the bankruptcy estate.

Therefore, using either § 541(a) or § 1306 results in the same outcome for Frost's distributed proceeds – once the temporal exemption was lost, the assets reverted to their initial status as property of the chapter 13 estate and, thus, eligible for distribution to creditors.

        4. *In re Frost* Does Not Apply in the Instant Chapter 7 Bankruptcy

Having reviewed the holding of *In re Frost*, given its proper context, and examined the effects of § 1306, § 1327, and § 541(a) within the underlying facts of the case, this Court will now turn to determining the extent, if any, to which the core holding of *In re Frost* applies in this chapter 7 bankruptcy. This Court's analysis is aided by the analysis of our learned sister court's opinion in *In re Smith*, discussed in greater detail above, and its interpretation of *Frost* in a chapter 7 context and, more recently, *In re DeBerry*.

The *Smith* court concluded that *Frost*'s central holding applied in the chapter 7 context at bar, thus rejecting the debtor's argument that *Frost* did not apply in the chapter 7 case at bar based on the inapplicability of § 1306. *In re Smith*, 514 B.R. at 845, 850. The *Smith* court further suggests that the *Frost* decision was not based on § 1306, because the *Zibman* court had previously held that the application of the snapshot rule created, in effect, a snapshot wherein the debtor was required to maintain the exemption requirements throughout the pendency of the bankruptcy and, failing that, the snapshot captured the movement of the exemption. *Id.* at 848-49. *But see In re DeBerry*, 2015 WL 6528024, at *3; *In re D'Avila*, 498 B.R. at 157-60.

However, as previously discussed, § 1306 is not the only avenue for Frost's distributed proceeds to have reverted to property of the chapter 13 estate. In this Court's opinion, the more persuasive argument is that Frost's distributed proceeds were exempted, but, pursuant to the chapter 13 plan, remained *property of the estate*, having not fully revested in the debtor, until the point at which the temporal exemption expired. At the moment the exemption lapsed, the distributed proceeds were simply reclaimed by the chapter 13 estate by operation of § 541(a)(6). Furthermore, the key section that permitted this retention to occur is § 1327(b) and, importantly, there is no similar provision applicable in a chapter 7 bankruptcy that constrains the transfer of

property from the bankruptcy estate back to the debtor upon exemption or the loss thereof. This retention is unlike the debtor in *In re Reed*, where the court concluded that as the exempt property had been withdrawn from the bankruptcy estate, § 541(a)(6)-(7) could not act to revest an exempted property interest back into the bankruptcy estate and, as such, the relief sought by the trustee was inappropriate because the thing they sought was not property of the estate, but *former* property of the estate now revested in the debtor. *In re Reed*, 184 B.R. at 738-41. Thus, Frost's proceeds, once the exemption had lapsed, are no different than those of the debtors in *Zibman*, *Morgan*, or *England*, where each had been effectively only, at best, *contingently* exempt by operation of the Proceeds Rule and compliance thereto. *In re Morgan*, 481 F. Appx. at 186-87; *In re Zibman*, 268 F.3d at 304 (stating that the effect of the lower courts' treatment of Zibman's proceeds was to "effectively read the 6-month limitation out of the statute, and transform an explicitly limited exemption into a permanent one"); *In re England*, 975 F.2d at 1175 (concluding that England's act of claiming a homestead exemption on his ranch terminated the exemption on the proceeds of his urban homestead); *see also In re DeBerry*, 2015 WL 6528024, at *2-3 (discussing how the exemptions by the debtor in *Zibman* and *Morgan* were "necessarily contingent upon their reinvestment and lost their character when the proceeds were not timely reinvested"); *In re D'Avila*, 498 B.R. at 155 (discussing how the debtor in both *Zibman* and *Myers* held mere contingent exemptions that "could be established or lost depending on later events.").

Finally, the bankruptcy estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." § 541(a)(7). "Congress enacted § 541(a)(7) to clarify its intention that § 541 be an 'all-embracing definition and to ensure that property interests created with or by property of the estate are themselves property of the estate.'" *In re*

*Hanley,* 305 B.R. at 87 (quoting 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978) (statements of Rep. Edwards); 124 Cong. Rec. S17413 (daily ed. Oct. 6, 1978) (statements of Sen. DeConcini)).   The Proceeds from the sale of the Homestead do not fall within the scope of § 541(a)(7), as the bankruptcy estate had an interest in the Homestead, pursuant to § 541(a)(1), that passed out of the bankruptcy estate upon exemption, as described in *Owen.*  *Owen,* 500 U.S. at 307-08) ("An exemption is an interest withdrawn from the estate (and hence its creditors for the benefit of the debtor.").   If the Proceeds were deemed to re-enter the bankruptcy estate, the applicable section to do so would be § 541(a)(6), but as this Court has concluded that is not the case.

This Court finds that the conclusions drawn by the *In re Reed* court and that of its progeny, *In re D'Avila* and *In re DeBerry,* is the proper interpretation of § 41.001's application to chapter 7 bankruptcy, the effect of §522(c), and § 541(a)(6)-(7) and adopts them to the extent that they apply to a post-petition sale of a properly exempted Texas homestead, such as the one in instant case.   Furthermore, this Court concludes that *In re Frost*'s core holding is based on factually distinguishable underpinnings and, as such, is distinguishable in a chapter 7 where, such as here, the debtor sells a properly exempted homestead post-petition.    Which is, necessarily, to say that *In re Frost* does not apply in the instant chapter 7 bankruptcy because to the extent that *In re Frost* could apply is really to say that the precedent upon which it is based, such as *England* and its progeny, are what is being applied and not *In re Frost.*  To wit, *Zibman, Morgan,* and *England* are not applicable in this situation, as their core holdings dealt with debtors who had only exempted or attempted to exempt *proceeds* then let the statutory period provided by § 41.001(c) expire.

f.   Effect of the "Six-Month" Rule in the Instant Case

Based on the foregoing analysis of Fifth Circuit precedent, the instant matter becomes remarkably simple.   Debtor sold his homestead, which had been properly exempted without objection under Texas law, in June 2014.   The result, pursuant to the standard in *Taylor v. Freeland & Kronz*, is that the exemption became final when Romo failed to lodge a timely objection to the exemption.   § 522(l); *Taylor*, 503 U.S. at 642.   Therefore, as the exemption of the homestead was final and, giving the full effect to § 522(c), the homestead was exempted from pre-petition liability because, unlike the debtor in *Frost*, the homestead was no longer property of the chapter 7 estate.   § 522(c) (stating that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose [pre-petition]", with certain inapposite exceptions, so long as the case is not dismissed); *Owen*, 500 U.S. 307-08 ("[a]n exemption is an interest withdrawn from the estate (and hence its creditors) for the benefit of the debtor"); *In re DeBerry*, 2015 WL 6528024, at *3; *In re Garcia*, 499 B.R. at 514 (noting that the Fifth Circuit only distinguished *In re Reed* in *In re Morgan* when it had the opportunity to reject or overrule its conclusion of once exempt, forever exempt in a chapter 7 bankruptcy); *In re D'Avila*, 498 B.R. at 156-57 (noting that *In re Morgan*'s distinguishing of *In re Reed* was only on a factual basis, not a legal one);   *In re Reed*, 184 B.R. at 737-38.   As such, the Debtor's exempted homestead, and necessarily its proceeds, are "withdrawn from the estate (and hence its creditors)."[20]   *Owen*, 500 U.S. at 307-08.

Moreover, while Debtor had not fully reinvested the proceeds into a new homestead by the time that six months had passed, Debtor had partially reinvested the proceeds into the New

---

[20] Should this be deemed in err upon review, the most that the unused Proceeds could be is $58,731.30, which represents the amount deposited by the Debtor on March 13, 2015 that was represented by Debtor to be a combination of two accounts that held Proceeds.  However, based upon further representations by Debtor, this Court believes that the true unused portion of the Proceeds is $56,556.49 based upon subtracting the expended monies from the net amount received by Debtor upon selling his homestead.

Property with the intent to build a homestead upon it.  Under Texas state law, as previously discussed, Debtor demonstrated a clear intent to establish that homestead, once completed, on the New Property and took substantial steps towards that ultimate goal.  However, Debtor failed to fully reinvest the remaining Proceeds, which are not property of the estate subject to §§ 541(a)(6) or (7), in the construction of his intended homestead before the six-month timeframe expired. The result is that the New Property itself should receive the protections of § 41.001(a), which is uncontested, if not admitted.  [Case No. 15-1003, ECF No. 15 ¶ 10].

The conclusion that this Court reaches is not to say that, should post-petition creditors seek relief against Debtor that they would necessarily be unsuccessful.  There is no question that Debtor has violated the requirements of § 41.001(c) in regard to the Proceeds.  However, the principles announced in *Owen*, which arose from a chapter 7 bankruptcy, and one of the fundamental twin pillars of bankruptcy is that the filing of a petition, including the claiming of exemptions, cuts off pre-petition unsecured creditors from seeking relief against those exempt assets.

### g.   Motion for Summary Judgment

Therefore, as this Court has concluded that the Proceeds from the sale of Debtor's properly exempted Texas homestead is an exempt asset, the remaining issue is whether Romo has met his burden for the Motion to be granted or, alternatively, have summary judgment granted *sua sponte* against Romo pursuant to Rule 56(f).  The standard, as articulated in Fed. R. Civ. P. 56, is "[that] the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine,' if the

evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe,* 115 F.3d at 296. "After giving notice and a reasonable time to respond, the court may ... consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f); *see also Celotex,* 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all her evidence."). With respect to the material facts of the instant matter, a successful claim by Romo for the turnover of Debtor's non-exempt proceeds would need to meet the following  elements: (1) the homestead was properly exempted under Texas law; (2) the properly exempted Texas homestead was sold after the bankruptcy case was filed; (3) the debtor, having received the proceeds from the sale of the homestead, failed to reinvest the proceeds into a new Texas homestead within the six month statutory time limitation; and (4) that by Debtor's failure to reinvest the Proceeds in a new Texas homestead within the statutory timeline that the Proceeds have lost their exemption in the instant bankruptcy.  In addition to carrying the burden of production as to those elements, Romo must also show that he is entitled to judgment as a matter of law.  This Court's conclusion that *In re Frost* does not apply in the instant case and the plain meaning of § 522(c), as interpreted in *Owen*, forecloses Romo's ability to demonstrate that he is entitled to judgment as a matter of law because the Homestead's uncontested exemption removed any liability for pre-petition debts, such as those comprising the chapter 7 estate.  Therefore, the analysis on Romo's Motion ends there.  *Celotex*, 477 U.S. at 330 (citing to *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-61 (1970), which provides that "[t]he court need not decide whether a moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production.").

Thus, the second stage of the analysis begins with whether the summary judgment should be granted against Romo and for the Debtor.  This Court finds that, pursuant to Rule 56(f)'s requirement, the parties have had their opportunity to present their evidence and arguments on the movant's Motion.  Fed. R. Civ. P. 56(f); *see also Filson*, 336 U.S. at 683; *Evans*, 754 F. Supp. at 95 (requiring that all that need be done is that the parties have "fully briefed the issues involved in this case"); *British Caledonian Airways Ltd.*, 819 F.2d at 595 (stating that the movant's motion for summary judgment "opened the door to allow the district court to grant summary judgment for [the nonmovant] sua sponte").  As such, if Debtor carries his burden of production, this Court may grant summary judgment for Debtor and against Romo.  To that end, in order for Debtor to carry the burden of production for this Court to grant summary judgment against Romo, he must show that: (1) the Debtors Texas homestead was properly exempted and neither the Trustee or any party in interest objected to the exemption; (2) Romo failed to object to the Debtor's discharge; and (3) that the case has not been dismissed.

As a pre-requisite matter, this Court must first look to see if Romo was properly on notice regarding his burden and the potential for summary judgment to be decided against him.  Romo's Motion provides that Debtor had claimed the Texas homestead exemption for the Homestead at the time of filing, [ECF No. 9 at ¶ 7], and Debtor's response to the Motion admits to that fact. [ECF No. 14 at ¶ 4].  Moreover, in Romo's Motion, he specifically cites to *Celotex* as a basis for his Motion.  [ECF No. 9 at ¶ 16].  It can hardly be said that Romo was unaware of the holding in *Celotex*, which as discussed above clearly provides that a district court may grant summary judgment *sua sponte* "so long as the losing party was on notice that [he] had to come forward with all of [his] evidence."  *Celotex*, 477 U.S. at 326.  As the movant, Romo's foremost responsibility is to "come forward with all of [his] evidence" otherwise his motion for summary

judgment must fail. *Id.*; *see also Norwegian Bulk Transp. A/S*, 520 F.3d at 512; *Condrey v. Sun Trust Bank of Georgia*, 429 F.3d 556, 562 (5th Cir. 2005). Therefore, this Court concludes that the parties were properly on notice, that they marshalled their evidence as they deemed fit, and had fair opportunity to present that evidence in a hearing. *Filson*, 336 U.S. at 683.

The facts are undisputed. Debtor, in his initial petition, claimed the homestead as exempt pursuant to Tex. Prop. Code § 41.001-.002 and Tex. Const. art. 16 §§ 50-51. [Case No. 14-10031, ECF No. 1 at 12]. Although Romo filed his Motion to Extend and his Second Motion to Extend, Romo never actually litigated the issue nor did he ever request or obtain an order from this Court granting Romo a denial of Debtor's discharge. *See* [ECF No. 13 & 22]. The only remaining element that Debtor need prove is that his bankruptcy case has not been dismissed. To that end, this Court necessarily takes judicial notice of the fact that Debtor's bankruptcy case is still open, but that Debtor has received his discharge, [ECF No. 35]. While the case remains open pending the resolution of this adversary proceeding, the discharge has become a final order now that the time to appeal has run. The effect of Debtor's discharge being a final order is that the only avenue for a dismissal to occur is via an order to vacate the discharge and Romo does not have the ability to seek such an order. 11 U.S.C. § 722(d-e) (providing methods for revoking a discharge, but none are at issue here and more than a year has elapsed since discharge was granted). Fed. R. Civ. P. 60(b) (providing grounds upon which a party may seek relief from a judgment or order); Fed. R. Bankr. P. 8002(a)(1) (providing a 14 day period from the entry of the judgment, order or decree being appeal that a party may file an appeal); *see also Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987) (holding that a final order that was not objected to nor appealed has a *res judicata* effect on noticed parties). Accordingly, Debtor's discharge is now a final order with binding effect upon parties to the bankruptcy, including Romo and

creditors of the chapter 7 estate, and the inability to vacate the order means that upon disposition of the instant adversary Debtor's bankruptcy case will be closed upon issuance of a new final decree.   Thus, there is no potential for dismissal of the bankruptcy case that would cause Debtor's exempt property to become liable for pre-petition debts.   § 522(c) (providing that exempt property is not liable for pre-petition debt, unless the case is dismissed).

Thus, as Debtor fulfilled his burden of proof, the burden of proof then shifted to Romo to prove any genuine issues of material fact.  Romo's Summary Judgement arguments and evidence presented to this Court do not raise, much less prove, any genuine issues of material fact relevant to the decision to grant summary judgment for Debtor.

Accordingly, this Court determines that Romo, as the moving party, has not met his burden and therefore his Motion must be **DENIED**.  However, this Court, *sua sponte*, has taken up summary judgment on behalf of Debtor, as is its right to do so pursuant to § 105(a), who has met the burden of establishing the non-existence of genuine issues of material fact.  The burden having shifted to Romo, has failed to prove that there are genuine issues of material fact; Debtor is therefore entitled to judgment as a matter of law.  *See Celotex Corp.*, 477 U.S. at 322-23. Therefore, this Court holds that Romo's Motion for Summary Judgment is **DENIED** and summary judgment is **GRANTED** for Debtor against Romo.

## V.    CONCLUSION

Romo, as the chapter 7 trustee, came before this Court seeking the turnover of certain assets that remained in the Debtor's possession following the sale of his Homestead, which was exempted pursuant to Texas law.  Romo argued that the Fifth Circuit's holding in *In re Frost* was applicable in a chapter 7 and provides that a debtor in bankruptcy, regardless of the particular chapter under which relief was sought, must maintain any qualifications for an exemption throughout the pendency of the bankruptcy case or risk the loss of the claimed exemption. Debtor, having failed to reinvest all of his proceeds into a new homestead within the six month period provided by § 41.001(c), was allegedly in possession of property of the estate, e.g. the Proceeds, that Romo sought to be turned over.   However, this Court has analyzed the enshrouding case law on this matter, including examining the factual underpinnings of *In re Frost*, and has concluded that, based on the foregoing analysis, *In re Frost* is not applicable in the instant matter.  Accordingly, Romo cannot prove that he is entitled to judgment as a matter of law and thus cannot be granted summary judgment in his favor.  Romo's Motion for Summary Judgment is **DENIED**.

Furthermore, Texas state law provides that Debtor's New Property qualifies for homestead protection as Debtor has taken substantial steps and evinced a clear intent to make the New Property his new Texas homestead, and thus this Court holds that the New Property retains its exempt status, or alternatively is entitled to exempt status under Tex. Prop. Code § 41.001(a) as a homestead.

This Court, pursuant to Rule 56(f), has, *sua sponte*, taken up whether Debtor is entitled to summary judgment against Romo.  Based on the foregoing analysis, this Court has concluded that Debtor is indeed entitled to summary judgment.  As such, summary judgment for Debtor is

**GRANTED**.  Accordingly, Romo will be directed to restore Debtor's bank account to the Debtor within fourteen (14) days of entry of the Order to accompany this Memorandum Opinion.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 03/09/2016.

Eduardo V. Rodriguez
United States Bankruptcy Judge